| | | |
|---|---|---|
| NICHOLAS S. LEHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.  1:10-cv-45 |
| | ) | |
| CITY OF FORT WAYNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

## I.  INTRODUCTION

Plaintiff Nicholas Lehman is suing the City of Fort Wayne (the "City"), the Fort Wayne Police Department (the "FWPD"), and Ryan Morgan, a records technician for the FWPD, under 42 U.S.C. § 1983 for use of excessive force and deliberate indifference to a serious medical need, and under state law theories of assault and battery.[1]  Lehman's claims stem from events that occurred following his arrest on January 21, 2008—in particular, Morgan's fingerprinting of Lehman's bandaged right pinky finger while processing him into the Allen County Jail. Lehman claims that the tendon of his right pinky finger, which had recently been surgically reattached, snapped as a result of the fingerprinting process performed by Morgan, requiring him to undergo a second surgical repair.

Now before the Court is Defendants' motion for summary judgment launching a full-scale assault on Lehman's case.  First, FWPD argues that it is not an entity that can be sued under 42 U.S.C. §1983.  Next, Defendants maintain that Morgan was not deliberately

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

indifferent to any serious medical condition displayed by Lehman during the fingerprinting process and, in any event, Lehman's bandaged hand does not constitute a serious medical condition. Morgan also argues that his application of pressure, straightening, and rolling of Lehman's right pinky finger during the fingerprinting process does not constitute excessive force as a matter of law. He further maintains that he is entitled to qualified immunity on the excessive force and deliberate indifference claims.

For its part, the City asserts that it is entitled to summary judgment on the *Monell* claims because Morgan received training on the fingerprinting process and there is no evidence of a widespread custom or practice of the FWPD concerning fingerprinting persons with hand injuries. Finally, Defendants argue that summary judgment should be granted on Lehman's state law claims. Lehman, of course, argues that a genuine issue of fact exists concerning all of these claims and that Defendants' motion should therefore be denied.[2]

For the reasons provided in this Opinion and Order, Defendants' motion for summary judgment will be GRANTED IN PART and DENIED IN PART.

## II. FACTUAL BACKGROUND[3]

Lehman was arrested by the Allen County Sheriff's Department on January 21, 2008, on charges of criminal conversion for the alleged theft of gasoline from a gas station. (Lehman Dep. 8, 14.) Lehman was booked into the Allen County Jail and placed in a holding cell.

---

[2] Lehman also pled an emotional distress claim under Indiana law. However, he does not challenge the proposition that this claim fails under Indiana law because the Indiana Tort Claims Act ("ITCA") provides immunity. *See, e.g.*, *Harness v. Schmitt*, 924 N.E.2d 162, 166 (Ind. Ct. App. 2010) ("The only stated exceptions to the statutory immunity for acts of law enforcement are false arrest or false imprisonment, and [the Indiana] Supreme Court has recognized an additional exception for use of excessive force.").

[3] For summary judgment purposes, the facts are recited in the light most favorable to Gorski, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

(Lehman Dep. 16-17.)

During the booking process, Lehman was fingerprinted by Morgan, an employee of the City's records division. (Morgan Dep. 4-6.) Morgan has worked as a records technician with the FWPD since April 2002 and performs a variety of tasks in that position, including the fingerprinting of inmates and individuals booked into the jail. (Morgan Dep. 4-6.) Morgan has attended a forty-hour class on fingerprint training offered by the FWPD and has been provided with policies and procedures on fingerprinting. (Morgan Dep. 11-12.) He does not recall, however, receiving any training or policies and procedures on how to handle individuals with injuries to their fingers or hands; rather, he relies upon his "common sense" and "judgment" in those circumstances. (Morgan Dep. 8, 18-19.)

Morgan explains that he attempts to get the best fingerprint possible. (Morgan Dep. 9.) In doing so, he holds the individual's hand and then rolls it, applying a little pressure to the hand. (Morgan Dep. 11.) He starts with a "four finger flop" of the individual's right hand, where four fingers are put down at the same time. (Morgan Dep. 14-16.) The thumb is then placed on the fingerprint card, and the fingers are rolled to make the print. (Morgan Dep. 16.) If the fingers are bandaged but the fingertips exposed, Morgan still attempts to get the best print possible. (Morgan Dep. 12.) If there is a finger he cannot print, he has the option to omit that finger. (Morgan Dep. 9.)

Two weeks prior to his arrest, that is, on January 7, 2008, Lehman had surgery on his right pinky finger to reattach a ruptured tendon. (Lehman Dep. 15-25, 43.) As a result, when he was taken for fingerprinting, there were stitches inside his right pinky finger, and his right hand and wrist were bandaged. (Lehman Dep. 15-25.) The bandage on his right hand ran from a few

inches below his elbow up to his fingers so that only his fingertips were exposed. (Lehman Dep. 15, 25.)  At the time he was arrested and booked, the fingertip of his right pinky finger was still discolored from the surgery. (Lehman Dep. 26.)

When taken to Morgan for fingerprinting, Lehman told Morgan "to be easy on" his right hand because he had recently undergone surgery.[4] (Lehman Dep. 19.)  He specifically informed Morgan about the surgery, explaining that after a tendon is replaced, it is not strong enough to be fully stretched out. (Lehman Dep. 20.)

Morgan acknowledged the information about Lehman's right hand and the recent surgery. (Lehman Dep. 20.)  As a result, instead of starting with the right hand per his usual procedure, Morgan started the fingerprinting process with Lehman's left hand so that the injured right pinky finger would be the last finger to be printed. (Lehman Dep. 14, 21.) Nonetheless, when Morgan reached the right pinky finger, he pushed down on it "[p]retty hard", straightened it out, and twisted "it to the left and then to the right". (Lehman Dep. 21-23.) When Morgan did so, Lehman felt a sharp pain from the tip of his pinky finger to the lower end of his right wrist, and he "hear[d] the tendon pop". (Lehman Dep. 23, 75.)  Immediately after he felt the pain and heard the "pop", he could no longer move the pinky finger. (Lehman Dep. 23-24.)

Lehman did not say anything to Morgan when he experienced the pain during the fingerprinting process, but his knees buckled and he let out a very pronounced "aaah". (Lehman

---

[4] Morgan has no recollection of Lehman or his booking process. (Morgan Dep. 7-8.)  He states, however, that if Lehman had complained about his finger during the fingerprinting process, he would have notified the lockup staff so a nurse could be consulted. (Morgan Dep. 21.)  Morgan further states that he would definitely have remembered if Lehman had complained about a major injury. (Morgan Dep. 22.)

Dep. 24, 75, 90.) Morgan then let go of Lehman's hand after he made the noise. (Lehman Dep. 90-91.) Lehman claims that when Morgan straightened his right pinky finger during the fingerprinting process, Morgan ignored the information that he had just relayed about his medical restrictions and, as a result, snapped the recently repaired tendon, necessitating an additional surgery. (Lehman Dep. 22, 26.)

Lehman returned to his cell after the fingerprinting and told his cell mate that his hand was hurting. (Lehman Dep. 28.) He did not, however, tell the jail officer who walked him back to his cell that his finger was injured. (Lehman Dep. 29.) In fact, he never told any jail personnel about having reinjured his finger and did not show anyone at the jail what his right finger looked like after the fingerprinting. (Lehman Dep. 36, 61.) Lehman admits that since there were no stitches on the outside, he would not have been able to see any visible injury at the time of the fingerprinting, and he was not bleeding on the outside of his bandage at that point. (Lehman Dep. 66.) He concedes that even if another individual had looked at his finger, he or she would not have known that it had been reinjured. (Lehman Dep. 66-67.)

When Lehman was released from the jail at approximately 4:00 p.m. that same day, his right pinky finger felt numb. (Lehman Dep. 37-38.) He then removed the bandage and "saw that he was hemorrhaging and blood was pooling in his palm." (Lehman Dep. 37-38.)

The next day, January 22, 2008, Lehman visited his orthopaedic surgeon, Dr. LaSalle. (Lehman Dep. 39-40.) The surgeon informed him that the tendon of his right pinky finger had ruptured and that he needed to undergo another surgery to reattach it. (Lehman Dep. 39-40.)

About six months later, on August 1, 2008, Lehman reinjured his right pinky finger. (Lehman Dep. 47-48.) He was sitting on the couch in his living room and heard the tendon pop.

(Lehman Dep. 47-48.)  Lehman states that the feeling was similar to that which he experienced when he was fingerprinted. (Lehman Dep. 48.)  Lehman admits, however, that this time the tendon popped while he was just sitting and without any force applied to his right finger. (Lehman Dep. 48-49.)

On January 1, 2010, Lehman filed suit against Defendants, alleging that Morgan's actions during the fingerprinting process constitute excessive use of force and deliberate indifference to his serious medical needs in violation of his civil rights, as well as assault and battery under state law. (Docket # 1.)  Lehman also alleges that the City failed to properly train Morgan how to fingerprint someone with a hand injury and that its widespread practice of relying upon a technician's common sense caused his injury. (Docket # 1.)

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party

opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. ANALYSIS

### A. FWPD Is Not a Suable Entity

"Municipalities are subject to suit for constitutional violations pursuant to 42 U.S.C. § 1983." *Martin v. Teusch*, No. 1:09-CV-321 JVB, 2010 WL 1474525, at *2 (N.D. Ind. Apr. 9, 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "However, a city's police department is not a suable entity apart from the municipality." *Id.*; *see West v. Waymire*, 114 F.3d 464, 646-47 (7th Cir. 1997) (articulating that Indiana municipal police departments lack the capacity to be sued); *McAllister v. Town of Burns Harbor*, 693 F. Supp. 2d 815, 822 n.2 (N.D. Ind. 2010) (same); *Vela v. Indianapolis Police Dept.*, No. 1:06-cv-1481-SEB-JMS, 2008 WL 191977, at *4 (S.D. Ind. Jan. 22, 2008) (collecting cases); *Culbreath v. Florea*, No. 3:06-CV-0749 WL, 2007 WL 433075, at *2 (N.D. Ind. Feb. 5, 2007) ("[U]nder Indiana law, a 'police department' has no separate corporate existence and is therefore not a suable entity."). Accordingly, Defendants' motion for summary judgment will be GRANTED with respect to the FWPD.

### B. The Excessive Force Claim Against Morgan Survives Summary Judgment

A claim of "excessive force . . . in the course of an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Scott v. Harris*, 550 U.S. 372, 381 (2007). This gives rise to the overarching question, "whether [the officer's] actions were objectively reasonable." *Scott,* 550 U.S. at 381. Answering this question "requires careful attention to the facts and

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

At bottom then, the inquiry focuses on whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Id*. at 397. This means that the Court must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Consequently, a "police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 778 (citation and internal quotation marks omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (stating that the court must look to whether the totality of the circumstances justified the seizure).

Here, when crediting Lehman's version of the events and drawing all reasonable inferences in his favor, *Payne*, 337 F.3d at 770, Lehman's claim of excessive force survives summary judgment. To explain, it is undisputed that when Lehman first came into contact with Morgan, his right upper extremity was bandaged from a few inches below his elbow to his fingers, leaving only his fingertips exposed. And Morgan admits that under the City's policy and procedure, he had the option to omit fingerprinting that finger. (Morgan Dep. 9.) Significantly, Lehman testified that he told Morgan the following before the fingerprinting process began:

> I told him, because my hand had been completely, had a huge bandage on it, like an elastic, stretchy bandage over it, I was telling him about my surgeries and stuff like that, and how my finger, as it looks now, how it bends and curves. Because after a tendon is replaced, like after a tendon replacement surgery, the

> tendon is *not strong enough to be stretched out fully* like that. So, I told him to
> be easy on it. I told him about the other surgeries and stuff.

(Lehman Dep. 19 (emphasis added).) Nevertheless, Morgan proceeded to fingerprint Lehman's

pinky finger anyway, and in doing so, "pushed down" "pretty hard" on it and "straightened it

out", and "twisted it to the left and then to the right", snapping the tendon. (Lehman Dep. 21-

23.)

Guidance can be found from the following two cases in which a plaintiff based a claim

of excessive force on the defendants' alleged disregard of certain medical restrictions. In

*Chapman v. Keltner*, 241 F.3d 842 (7th Cir. 2001), officers arrested Chapman, a pretrial

detainee, upon her discharge from the hospital and just after abdominal surgery. The officers

escorted Chapman to a police van for transport, and she noticed there was a large step up into

the van. *Id*. at 844. She told the officers that the step was too high and that the doctor told her

"not to take stairs except one at a time"; she asked if she instead could turn around and enter the

van backwards and sit on the floor. *Id*. The officers refused her request and instructed her to

step into the van with their assistance. *Id*. Chapman complied, and in doing so, ripped her

incision and began to bleed. *Id*.

The Seventh Circuit Court of Appeals affirmed summary judgment in favor of the

officers because there was no evidence Chapman was *totally* prohibited from climbing stairs.

Rather, her doctor had told her to "avoid stairs in general, and to climb stairs one at a time", a

point she conceded in her deposition. *Id*. Significantly, however, the Seventh Circuit agreed

with the lower court that if Chapman had told the officers that her doctor instructed her not to

climb *any* stairs, the decision may have come out differently. More particularly, the Court

stated:

> If defendants were informed that a physician instructed Chapman not to climb any stairs, that is a far different matter than if they were informed that a physician told Chapman to take stairs one at a time. Requiring Chapman to climb into the van represents a clear disregard of the former, but only a potentially negligent interpretation of the latter.

*Id*. (quoting *Chapman v. Keltner*, No. 98 C 6295, 2000 WL 1053969, at *3 (N.D. Ill. June 30, 2000)). Here, it can reasonably be inferred from the record that Lehman told Morgan his finger could *not* be fully straightened out and that Morgan demonstrated a "clear disregard" of this restriction.[5] As a result, the above-quoted language from *Chapman* is instructive.

In *Bermudez v. Ahrens*, No. 00 C 50365, 2002 WL 1803741, at *1 (N.D. Ill. Aug. 6, 2002), the arresting officer forcefully pulled Bermudez's arm behind her back to handcuff her, even though she told the officer that she had a "bad arm" that would not go behind her back and he could tell by pulling on it that it was unable to perform the motion. The Court denied summary judgment to the officer because a jury could find the officer's actions objectively unreasonable, particularly since it may not have been necessary to handcuff Bermudez at all because she was completely cooperative, not a threat to safety, and arrested on a minor charge. *Id*.; *see also Frazell v. Flanigan*, 102 F.3d 877, 885 (7th Cir. 1996) (affirming jury verdict in plaintiff's favor on excessive force claim where a reasonable jury could have found that the arresting officer knew that plaintiff was prone to seizures and "could then have concluded that [the officer's] conduct in the face of that knowledge was unreasonable"), *overruled on other grounds by McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002).

As in *Bermudez*, and as suggested in *Chapman*, a reasonable jury could conclude that

---

[5] The record is not clear whether Lehman actually told Morgan that the restrictions he was citing came from a physician, but it is a fair inference that he did since he spoke of recent surgeries and was wrapped in bandages. In short, Lehman would have no need to speak of surgeries except to explain his medical restrictions.

Morgan's pushing down, straightening out, and twisting of Lehman's pinky finger during the fingerprinting process was excessive, considering that (1) Lehman's hand and wrist were bandaged, (2) it can be reasonably inferred from the record that he told Morgan that his right pinky finger was "not strong enough to be fully stretched out", (3) and Morgan had the option to omit fingerprinting that finger. It is "well established that the use of force unnecessary for an arrest, particularly where force is applied to a suspect who is not fleeing or resisting, and who has been overcome, cannot be considered constitutionally reasonable." *Norris v. Bain*, No. 1:04-CV-1545DFHTAB, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006); *see Hill v. Miller*, 878 F. Supp. 114, 116 (N.D. Ill. 1995). Of course, as in *Chapman*, the outcome of Lehman's claim will ultimately turn on what specific information he told Morgan about his finger before Morgan fingerprinted it. *See Chapman*, 241 F.3d at 846 ("The difference between the allegations in [plaintiff's] complaint and the actual evidence is critical on this point."). Nonetheless, at this juncture, the record falls short of warranting summary judgment in Morgan's favor.

Summary judgment is also not warranted based on Morgan's assertion of qualified immunity. "[P]olice officers are not entitled to qualified immunity when they use force to restrain a suspect who has some visible or objective indicia of an injury or medication condition, or who they in fact know has such a condition, that makes [him] more vulnerable to the use of such force." *Bermudez*, 2002 WL 1803741, at *2 (collecting cases); *see also Chapman v. Keltner*, No. 98 C 6295, 1999 WL 519387, at *5 (N.D. Ill. July 14, 1999) (denying qualified immunity to officers in a motion to dismiss where plaintiff alleged that the officers had disregarded her medical restrictions); *cf. Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir.

2009) ("Had the Officers known of a preexisting injury or medical condition that would have been aggravated by handcuffing [plaintiff], or had [plaintiff] communicated to the Officers that he suffered from such an infirmity, the Officers certainly would have been obligated to consider that information, together with the other relevant circumstances, in determining whether it was appropriate to handcuff [plaintiff].").

According to Lehman's telling of events and drawing all reasonable inferences in his favor, Morgan in fact knew that Lehman had recently undergone a surgical repair of his pinky finger tendon that made him more vulnerable to the application of *any* force and that his finger was not strong enough to be "stretched out fully". Therefore, on this record, Morgan is not entitled to qualified immunity. *See White v. Gerardot*, No. 1:05-cv-382, 2007 WL 541819, at *7 (N.D. Ind. Feb. 15, 2007) ("[W]hen factual disputes surrounding the conduct at issue bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law, then summary judgment on the issue of qualified immunity must be denied." (internal quotation marks and citations omitted)).

### C. The Deliberate Indifference Claim Against Morgan Also Survives Summary Judgment

In order to sustain a § 1983 claim for violation of a pretrial detainee's Fourteenth Amendment due process right to adequate care,[6] the plaintiff must show that: (1) he had an "objectively serious medical condition"; (2) "the defendants knew of the condition and were

---

[6] "The Eighth Amendment's ban on 'cruel and unusual punishments' requires prison officials to take reasonable measures to guarantee the safety of inmates, including the provision of adequate medical care." *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1970)). Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause." *Id*. Accordingly, the same legal standards are applied to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010).

deliberately indifferent to treating [him]"; and (3) "this indifference caused [him] some injury."

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "An objectively serious medical

condition is one that 'has been diagnosed by a physician as mandating treatment or one that is

so obvious that even a lay person would perceive the need for a doctor's attention.'" *Id.*

(quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)).

　　"With regard to the deliberate indifference prong, the plaintiff must show that the

official 'acted with the requisite culpable state of mind.'" *Id.* (quoting *Reed v. McBride*, 178

F.3d 849, 852 (7th Cir. 1999)). This inquiry has two components: "[t]he official must have

subjective knowledge of the risk to the inmate's health, and the official also must disregard that

risk." *Id.* (citing *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)); *see also Minix*, 597 F.3d

at 831. "Simply put, an official 'must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

*Gayton*, 593 F.3d at 620 (quoting *Higgins v. Corr. Med. Serv. of Ill., Inc.*, 178 F.3d 508, 510

(7th Cir. 1999)).

　　Applying this legal standard to the instant circumstances, Morgan first suggests that it is

"questionable" whether Lehman's pinky finger injury constitutes a serious medical condition,

since there was "nothing life threatening about Lehman's bandaged hand" and he "was not

bleeding when he was fingerprinted." (Mem. of Law 8.) While certainly relevant, the fact that

Lehman was not bleeding while he was fingerprinted or that his injury was not life-threatening

is not dispositive of whether his finger injury constituted a "serious medical condition" under

Seventh Circuit case law. *See Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) ("A serious

medical condition need not be life-threatening." (quotation marks and citation omitted)); *Davis*

*v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991) (explaining that "serious" medical conditions are those that may be "life threatening or pose a risk of needless pain *or lingering disability* if not treated at once" (emphasis added)).

There is no dispute that Lehman was diagnosed with a tendon rupture prior to his arrest, had undergone a tendon repair surgery, and was under the care of a surgeon who ostensibly assigned him certain restrictions and whom he visited the morning after his arrest. Furthermore, Lehman's finger felt "paralyzed" after the tendon snapped (Lehman Dep. 23, 37), suggesting that the condition could give rise to a "lingering disability". *Davis*, 936 F.2d at 972; (*see* Lehman Dep. 67 (stating that after one of his surgeries, his physician discussed possible amputation of the finger)). Consequently, Lehman's injury bears more of the indicia of a "serious medical condition" that could result in a lingering disability than a minor ache or pain. *Compare Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (articulating that minor aches and pains do not rise to the level of serious medical needs), *with Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001) (finding a serious medical need where delay in treating re-attached finger that had turned black from infection caused part of finger to fall off). Therefore, Lehman satisfies the first prong of the deliberate indifference standard.

Morgan contends that Lehman cannot possibly satisfy the second prong of his deliberate indifference claim because he never complained about his finger after the fingerprinting, there was no visible bleeding, and he never asked for medical attention. Thus, as Morgan sees it, he is entitled to summary judgment because "Lehman designates no evidence that [he] had actual knowledge that Lehman reinjured his right pinky finger during the fingerprinting process." (Resp. Br. 3.)

14

Morgan's argument, however, is too circumscribed, focusing solely on the events *after* the fingerprinting. In *Estelle v. Gamble*, 429 U.S. 97, 98 (1976), the Supreme Court held that a prison official's actions that "intentionally den[ied] or delay[ed] access to medical care *or intentionally interfer[ed] with the treatment once prescribed*" constitutes deliberate indifference to serious medical needs of prisoners. (emphasis added); *see also Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). In that regard, "it is of particular significance in this case that '[d]eliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by 'intentionally interfering with the treatment once prescribed.'" *Martin v. Bd. of Cnty. Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990) (denying summary judgment on deliberate indifference claim where officers ignored pretrial detainee's warning that she was to only be moved via gurney or wheelchair and she suffered an aggravation of her neck injury in transport); *see also Hoeft v. Harrop*, No. 08-cv-674, 2009 WL 2383153, at *2 (W.D. Wis. July 31, 2009) (collecting cases where courts have held that forcing an inmate to work in jobs that exceed his medical limitations constitutes deliberate indifference).

Here, when viewing the facts in the light most favorable to Lehman and drawing all reasonable inferences in his favor, a reasonable jury could conclude that Morgan intentionally interfered with the treatment of Lehman's finger, satisfying the second prong of his deliberate indifference claim. As emphasized earlier, it is reasonably inferred from this record that Lehman told Morgan that his pinky finger tendon was "not strong enough to be stretched out fully" because of his recent surgical tendon repair. Nevertheless, when fingerprinting Lehman, Morgan pushed down on his pinky finger "[p]retty hard" and straightened it out, and then

"twisted it to the left and then to the right". (Lehman Dep. 21-23.)

Moreover, the parties do not dispute that Morgan's fingerprinting of Lehman's pinky finger caused him injury—the third prong of his deliberate indifference claim. *Gayton*, 593 F.3d at 620. That is, Morgan does not contest Lehman's testimony that he felt a "very sharp pain" from the tip of his pinky finger to the lower part of his wrist when Morgan manipulated his finger and that he could no longer move his finger after that. (Lehman Dep. 23-24.) The record also evidences that Lehman visited Dr. LaSalle the next morning, who confirmed that the tendon had indeed snapped and that Lehman needed another surgery to repair it.

Of course, as with his excessive force claim, the outcome of Lehman's deliberate indifference claim will ultimately turn on what specific information he told Morgan about his finger before Morgan fingerprinted it. *See Chapman*, 241 F.3d at 846 ("If the officers were aware that Chapman was prohibited from climbing all stairs, disregarded this and required her to step into the van, then perhaps the officers' conduct would constitute deliberate indifference."). At this juncture, however, the record falls short of warranting summary judgment in Morgan's favor, as it can be reasonably inferred from Lehman's deposition testimony that he told Morgan that his finger should not be straightened out.

As with his excessive force claim, summary judgment is also not warranted on Lehman's deliberate indifference claim based on Morgan's assertion of qualified immunity. "Since 1976, the Fourteenth Amendment deliberate indifference standard has been clearly established by *Estelle* . . ., which held that a prison official's actions, which . . . intentionally interfere[d] with the treatment once prescribed,' constitute deliberate indifference to serious medical needs of prisoners." *Chapman*, 1999 WL 519387, at *6 (citing *Estelle*, 429 U.S. at

104).  Lehman alleges that Morgan was deliberately indifferent to his serious medical need when Morgan pushed down, straightened out, and twisted his pinky finger contrary to his doctor's restrictions.  "Assuming these allegations are true, [Morgan] will not be shielded by qualified immunity because a reasonable police officer would have understood that what he was doing violated [Lehman's] Fourteenth Amendment rights." *Chapman*, 1999 WL 519387, at *6 (citing *Lanigan v. Vill. of Hazel Crest*, 110 F.3d 467, 472 (7th Cir. 1997)); *see White*, 2007 WL 541819, at *7.  Therefore, Morgan's motion for summary judgment on Lehman's deliberate indifference claim will be DENIED.

### D.  The Monell *"Custom or Practice" Claim Will Be Dismissed on Summary Judgment*

To recover against the City, Lehman must demonstrate that a municipal policy or custom caused the alleged deprivation of his constitutional rights.  *See Rasche v. Vill. of Beecher*, 336 F.3d 588, 597 (7th Cir. 2003); *Monell*., 436 U.S. at 690.  More particularly, he must show that: "(1) [he] suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [municipality]; which (3) was the proximate cause of his injury." *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002); *see also Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009).  "Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007).

Lehman does not allege that the City has an express municipal policy concerning the fingerprinting of persons with hand injuries or that Morgan had final policy-making authority for the City.  Rather, he contends that "the moving force" behind his tendon rupture, *Estate of*

*Sims*, 506 F.3d at 514, was the City's widespread practice or custom of having its records technicians rely upon their own common sense and judgment when fingerprinting inmates with hand injuries.

On this record, however, no reasonable jury could conclude that the City's purported practice is unconstitutional, since it is undisputed that in accordance with that practice Morgan could simply have elected to forego fingerprinting Lehman's injured finger. The fact that Lehman does not assert that other persons with hand injuries were harmed during the fingerprinting process "is strong evidence that the [City's practice] actually worked." *Arlotta v. Bradley Ctr.*, 349 F.3d 517, 523 (7th Cir. 2003). If Lehman did, in fact, definitively tell Morgan that his finger should not be fully straightened because it would harm the recently-repaired tendon, it was because Morgan did not follow the City's practice to apply common sense and omit that finger when fingerprinting Lehman, *not* that the practice itself was deficient. *See id.*

Therefore, Lehman's claim that a custom or practice of the City was the proximate cause of his tendon rupture will not survive summary judgment.

### E. The Failure-to-Train Claim Against the City Will Be Dismissed on Summary Judgment

Not to be deterred, Lehman also alleges that the City is liable because it failed to adequately train Morgan to fingerprint persons with hand injuries. This claim, however, quickly arrives at the same fate as the *Monell* claim discussed above.

"[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Dunn v. City of Elgin, Ill.*, 347 F.3d 641, 646 (7th Cir. 2003) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference may be shown in

18

one of two ways: first, when a municipality "fails to train its employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in a constitutional violation"; and second, if the municipality "fails to provide further training after learning of a pattern of constitutional violations by the police." *Id*. (citations omitted).

Here, it is undisputed that Morgan received a full week of training on fingerprinting, together with written policies, when he started his position with the records division in 2002 and that he periodically received the City's updates on these policies. (Morgan Dep. 11-12, 19.) Furthermore, while the record is unclear whether specific training or policies were included on fingerprinting persons with hand injuries, it is undisputed that Morgan was instructed that he had the option to omit fingerprinting an injured hand.

In any event, Lehman has to show "that the City was aware that unless further training was given[,] the officers would undermine the constitutional rights of others." *Dunn*, 347 F.3d at 646 (citing *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000)). Here, as stated earlier, Lehman has not pointed to other persons with hand injuries who were harmed during the fingerprinting process, and consequently, there is no evidence to suggest the City was aware that any additional training was needed. *See Ross v. Town of Austin, Ind.*, 343 F.3d 915, 918 (7th Cir. 2003) (explaining that a finding of "deliberate indifference" is derived from a municipality's failure to act in the face of "actual or constructive notice" that such failure is likely to result in constitutional deprivations); *see generally Erwin v. Cnty. of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir. 1989) ("Even adequately trained officers sometimes err, and such error says little about their training program or the legal basis for liability.").

In short, like his other *Monell* claim, Lehman's failure-to-train claim against the City will not survive summary judgment.

### F. The State Law Assault and Battery Claims Will Survive Summary Judgment

Lehman also asserts state law tort claims of assault and battery against Defendants for his injuries resulting from Morgan's fingerprinting of his right pinky finger. Like Lehman's § 1983 excessive force claim, these state claims will survive summary judgment.

What constitutes a civil battery is well established. "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007) (citing RESTATEMENT (SECOND) OF TORTS § 13 (1965)). Accordingly, Defendants are liable for a simple battery if Morgan "intentionally causes bodily contact to the plaintiff in a way not justified by the plaintiff's apparent wishes or by a privilege, and the contact is in fact harmful or against the plaintiff's will." 1 D.B. DOBBS, THE LAW OF TORTS § 28 at 52-53 (2001).

On this record, it can certainly be inferred that Morgan was acting with the knowledge that his forcefully pushing down, straightening out, and twisting of Lehman's injured finger was inconsistent with Lehman's wishes, that is, "offensive," given that Lehman claims he told Morgan that his finger should not be fully straightened. *Id*. § 29 at 55 ("[A] touching is 'offensive' if it infringes upon the plaintiff's actual and apparent wishes to avoid it."); *see also Lessley v. City of Madison, Ind*., 654 F. Supp. 2d 877, 914 (S.D. Ind. 2009) ("Even a slight touching without consent can be the basis of a battery action. . . . Just as touching may be a

basis for a battery claim, it also may be a basis for an assault claim.").

In response, Defendants argue that they cannot be liable for state law assault and battery because Morgan had a "statutory duty" to fingerprint Lehman, *see* Ind. Code § 36-2-13-5(a)(8), which the Court interprets as the advancement of a legal privilege defense. However, "[u]nder Indiana law, a police officer may use only the force that is reasonable and necessary for effecting an arrest." *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 866 (S.D. Ind. 2006) (citing Ind. Code § 35-41-3-3(b)). Consequently, "[i]f a police officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery." *Id*. (citing *Crawford v. City of Muncie*, 655 N.E.2d 614, 622 (Ind. App. 1995); *City of South Bend v. Fleming*, 397 N.E.2d 1075, 1077 (Ind. App. 1979)); *see also Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 914 (S.D. Ind. 2009). "Indiana's excessive force standard effectively parallels the federal standard . . . ." *Fidler*, 428 F. Supp. 2d at 866 (citing *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. App. 2000)).

Furthermore, excessive force claims fall outside the scope of law enforcement immunity under Indiana law. *Lessley*, 654 F. Supp. 2d at 913; *Elliott v. Sheriff of Rush Cnty., Ind.*, 686 F. Supp. 2d 840, 868 (S.D. Ind. 2010); *Wilson v. Isaacs*, 929 N.E.2d 200, 203-04 (Ind. 2010) (concluding that the law enforcement immunity of the ITCA does not shield the government from liability for excessive force by police). Consequently, the statutory law enforcement immunity does not bar Lehman's claims for assault and battery against Defendants. *Lessley*, 654 F. Supp. 2d at 913; *Elliott,* 686 F. Supp. 2d at 868; *Wilson*, 929 N.E.2d at 203-04.

At the end of the day, "[t]he same genuine issues of material fact that prevent this [C]ourt from granting summary judgment on [Lehman's] § 1983 claims therefore also preclude

summary judgment on [his] state law claims . . . ." *Fidler*, 428 F. Supp. 2d at 866.

Consequently, Defendants' motion for summary judgment on Lehman's state law claims of

assault and battery will be DENIED.[7]

# V.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket # 24) is

GRANTED IN PART and DENIED IN PART, in that only the following claims survive: (1) the

§ 1983 excessive force claim against Morgan; (2) the § 1983 deliberate indifference claim

against Morgan; (3) the state law assault and battery claims against Morgan; and (4) the state

law assault and battery claims against the City of Fort Wayne.

SO ORDERED.

Enter for this 3rd day of January, 2011.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[7] Although it appears to be undisputed that Morgan was acting in the scope of his employment and thus that the City should be the sole Defendant on these state law claims under *respondeat superior*, Defendants do not assert or argue the ramifications of the ITCA. *See* Ind. Code § 34-13-3-5(b) ("A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."); *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999) ("Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment.").  As a result, at this juncture both Morgan and the City will remain as Defendants to the state law claims.